[Crim. No. 3276.   First Dist., Div. Two.   Feb. 26, 1957.]

THE PEOPLE, Respondent, v. EDWARD FRANKLIN WHITEHEAD, Appellant.

*Assigned by Chairman of Judicial Council.

Thomas F. Curtin, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence W. Linn, Assistant Attorney General, and William M. Bennett, Deputy Attorney General, for Respondent.

DOOLING, Acting P. J.—Defendant was convicted by a jury upon two counts of an information which charged him with having violated section 288 of the Penal Code. His motion for a new trial was denied, the court found that he was not a sexual psychopath, and he was denied probation. He appeals from the judgment of conviction and from the order denying a new trial.

At the time of the alleged offenses the prosecuting witnesses, two sisters, were living across the street from appellant. Roxanna was 7 years of age and Deborah 6. They were friendly with appellant's daughter, Caroline Lee, aged 6, and frequently came to appellant's house to play with her.

Roxanna testified that on the day in question, a Saturday, she and Deborah went over to appellant's house to play with Caroline Lee. She knocked on the door and they were admitted by appellant. Neither Caroline Lee nor her mother were home and appellant was alone at the time. Appellant told them that they could play with Caroline Lee's toys. Then Roxanna went into appellant's bedroom. She was asked if anything happened in there and she answered "Yes." Then she was asked:

"Q. What happened? A. He put his hands on me.

"The Court: He put his hands on you?

"The Witness: Yes.

"Q. (By Mr. Hemmings) Will you kind of show us, Roxanna, where he put his hands on you? A. (Indicating)

"The Court: Just point again, won't you, Roxanna?

"The Witness: (Indicating)

"The Court: Well, farther down, will you——

"The Witness: (Indicating)

"The Court: Right between—— Are you indicating between the legs?

"The Witness: Yes.

"The Court: All right. Then let the record show that she's indicated between her legs."

She told her parents what appellant had done although appellant had told her not to tell her father or anyone.

Deborah's testimony regarding the circumstances under which she and Roxanna entered appellant's house was similar to that of her sister. She stated that they went across the street to visit Caroline Lee in the morning of the day in question. She testified that she went into the living room and the bedroom of the house and that Roxanna went into the living room, Caroline Lee's room, and appellant's room. To the question "Did something strange happen while you were in Ed's [appellant's] house?" She replied "Yes." She was asked to tell what happened and she replied: "A. He done this to us. (Demonstrating)." The court then said "In other words, you're putting your hand in between your legs, is that right?" Deborah nodded in response to this question. She said that appellant touched her *outside her skirt* and that he did so more than one time. She was in the living room when appellant touched her. Appellant told her not to tell anybody what he did but she told her parents what happened at appellant's house.

On cross-examination Deborah became rather confused about just where in the house the alleged offenses occurred. She stated that she was playing with Roxanna in Caroline Lee's bedroom all the time but that she did not see appellant touch Roxanna because they went into the bedroom alone.

The father of the complaining witnesses testified that on the day of the alleged offenses at about 1:30 or 2 p. m. his daughters left the house together. They went across the street to appellant's house. About 25 minutes later they returned home and complained to him about what had happened. The father had previously spoken to his daughters about strangers touching them and had warned them about this sort of thing. The mother of the children called the sheriff's office.

Appellant testified in his own behalf. He stated that he was home alone on the Saturday afternoon in question. He was watching television and fell asleep on the davenette. He was awakened by the noise of the complaining witnesses playing in his daughter's bedroom with her toys. He told the children to put the toys away and to go home. He was angry with the children both because they had awakened him out of a sleep and because he felt that they had no business entering his house and going through things as they did. When he told the sisters to put the toys away they said they didn't want to, that they wanted to play house. He said that he

then went back and sat on the davenette and the children started to put the toys back in a closet. He further testified that as one of the little girls came through the house on the way out she said to him: "I'm going to tell my mama on you." One of them was very angry with him. He swore that he never laid his hands on either one of the little girls.

On cross-examination appellant stated that he had had a couple of drinks of whiskey during the morning of the day of the alleged offenses. He further stated that at the time of his arrest he did not know that he was being charged with a violation of Penal Code, section 288, but thought that he was being arrested for drunk and disorderly conduct.

The jurors retired to consider their verdict at 4:20 p. m. At 5:30 p. m. the jury returned and asked to have reread to them the part of the court's charge concerning evidence which is susceptible of two equally reasonable constructions, one pointing to the guilt of a defendant and the other to his innocence. After having dinner the jury returned its verdicts at 7:50 p. m.

Much of the testimony of the two little girls was elicited by leading questions. ■ The use of leading questions with an immature witness may be necessary and lies in the sound discretion of the trial judge. (*People* v. *Goff,* 100 Cal.App. 2d 166, 169-170 [223 P.2d 27]; *People* v. *Doxie,* 34 Cal.App. 2d 511, 513-514 [93 P.2d 1068]; *People* v. *Hinrich,* 53 Cal. App. 186 [199 P. 1058]; *People* v. *Gregory,* 8 Cal.App. 738, 744-745 [97 P. 912]; Code Civ. Proc., § 2046.) The danger of suggesting the answers by this form of interrogation, however, especially to immature and therefore presumably more suggestible witnesses, is obvious, and court and counsel should be meticulous to obviate this danger so far as possible. ■ It is clear that the trial judge, no doubt with the best of intentions, grievously overstepped the bounds of all reasonable discretion in the portion of the examination of Roxanna in which she was attempting to indicate the part of her body upon which she was testifying the appellant had placed his hand. His statement: "Well, farther down, will you——" was more than a leading question. It was a direction to the child to place her hand on a lower portion of her body than she was then indicating, a direction which the transcript demonstrates that she immediately obeyed. Courts have frequently commented on the extreme care that trial judges should use not to give the impression that the judge is taking sides in the trial of the case before the jury. (*People* v. *Byrd,*

88 Cal.App.2d 188 [198 P.2d 561] and cases cited at p. 191.) It would have been grievous error for the prosecuting attorney to direct the child where to place her hand and the error was much more damaging when the direction came from the trial judge whose every action is apt to be clothed in the minds of the jury with the greatest importance. What conclusion could the jury reasonably draw from the trial judge's conduct than that he believed that appellant had placed his hand upon the portion of the child's body upon which he directed her to place her own?

In his argument to the jury the prosecuting attorney in several instances stepped beyond the bounds of proper argument. He stated in one instance:

"I know just enough about the subject to say this: that at a certain age period men go through something that causes them to want to find something in the way of sexual gratification other than what normal people go through. And I hate to say it. As a matter of fact, I hate to have anything to do with a case like this, because it doesn't give me any pleasure to wash dirty linen, and that's just what we're doing here on Rita Drive.

"But anyway, men of the caliber of Whitehead do it, and unless Whitehead is convicted I'm sure he's going to do it again, because that is just the history of what we in the District Attorney's office have learned to call 288'ers.''

There was no evidence before the jury, and there could not properly have been, that at a certain age period (presumably at appellant's age) "men go through something that causes them to want to find . . . sexual gratification other than what normal people go through,'' and there was no justification in the evidence, and there could not properly have been, that it is the history of such men which led the district attorney's staff to know from experience with "288'ers'' that "unless Whitehead is convicted . . . he's going to do it again.''

By this portion of his argument the prosecutor brought before the jury his own unsworn testimony as to the predilection of men of Whitehead's age to commit offenses of this character and of the experience of his office that such men if acquitted will repeat the same character of offense. That this argument was highly inflammatory goes without saying. The jury could not help being impressed by the recital of the past experience of the district attorney's office and may well have given weight to it in weighing the evidence of the two little

girls against the flatly contradictory testimony of the appellant. It is always misconduct for a prosecutor to bring before a jury facts from his own experience which are not to be found in the evidence before them. "Equally well-settled is the rule that statements of facts not in evidence by the prosecuting attorney in his argument to the jury constitute misconduct." (*People* v. *Kirkes,* 39 Cal.2d 719, 724 [249 P.2d 1]; *People* v. *Evans,* 39 Cal.2d 242, 251 [246 P.2d 636]; *People* v. *Cook,* 148 Cal. 334, 349 [83 P. 43]; *People* v. *Delgado,* 28 Cal.App.2d 665, 668 [83 P.2d 512].)

The prosecuting attorney was likewise guilty of misconduct in arguing to the jury the fact that appellant had been held to answer to the charge after a preliminary hearing in the justices court. (*People* v. *Wayne,* 41 Cal.2d 814, 829 [264 P.2d 547]; *People* v. *Brown,* 81 Cal.App. 226, 241 [253 P. 735].)

Further the prosecutor argued that because appellant was addicted to drink and his wife had recently "had quite a discussion about it" with him . . . "If you should vote to send Mr. Whitehead back to his family today, I don't think they would welcome him." The jury were concerned only with the guilt or innocence of the accused on the information before them. It was no concern of theirs whether he would be welcomed by his family if acquitted and it was highly improper for the prosecutor to argue that the jury should take that question into account in determining his guilt or innocence.

The verdicts, as is generally true in prosecutions for crimes of this character, depended entirely on weighing the testimony of the two little girls brought out largely through leading questions against the uncorroborated testimony of the appellant. The jury at the outset certainly entertained a serious question about the sufficiency of the evidence as shown by their request, after deliberating for more than an hour, for a rereading of certain instructions on the subject. The trial took less than one day and the evidence was not complex so that an hour's deliberation should have enabled the jury to fully review the evidence. The probability that the jury in ultimately arriving at their verdicts of guilt were influenced by some or all of the matters discussed seems strong.

We are mindful of the fact that no objection was voiced by appellant's counsel at the trial to any of these matters. Our task then is to determine whether the misconduct of court and counsel was of such a nature in view of the character

of the charge that an instruction or admonition of the court could not have purged its harmful effect. (*People* v. *Kirkes, supra,* 39 Cal.2d 719, 726.)

Certainly once the youthful witness had placed her hand "lower down" on her body following the direction of the court nothing could undo the effect of that action on the jury. The effect of the misconduct of the prosecutor was cumulative of this primary irreparable misconduct. In measuring its effects we are entitled to consider the statement of the Supreme Court in *People* v. *Adams,* 14 Cal.2d 154, 168 [93 P.2d 146], in discussing the effect of error in a prosecution for violating Penal Code, section 288: "It is because of the recognized existence of the ease with which convictions of men, even those of unblemished reputation, may be secured in cases of the instant kind that courts are at pains to insist upon fair trials in all respects being accorded to the accused. Errors committed either by the prosecution or by the court in the course of the trial, which ordinarily might be considered trivial and as of no material consequence from a standpoint of adverse effect upon the rights of a defendant, may become of great importance when committed in a case of the character of that here involved."

The court in *People* v. *Evans, supra,* 39 Cal.2d 242, 252, quoted with approval the language of *People* v. *Adams, supra,* and commented at page 251: "In a case such as this where the crime charged is of itself sufficient to inflame the mind of the average person, it is required that there be rigorous insistence upon observance of the rules of the admission of evidence and conduct of the trial."

Upon the reading of the entire record in this case we are convinced that appellant suffered prejudicial error.

Judgment and order denying new trial reversed.

Kaufman, J., and Draper, J. pro tem.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 25, 1957.

---

*Assigned by Chairman of Judicial Council.