[Crim. No. 3240.   Third Dist.   Nov. 30, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. WALTER ALDRIDGE, Defendant and Appellant.

Eugene L. Rogers, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Nat Agliano, Deputy Attorney General, for Plaintiff and Respondent.

SCHOTTKY, J.—Walter Aldridge and Robert Perry were charged by information with the crimes of robbery and assault with a deadly weapon. The jury returned a verdict of not guilty as to Perry but found Aldridge guilty of both crimes charged, and he has appealed from the judgment.

It appears from the record that Mary Zaretsky, 76 years of age, was the owner and operator of the New York Secondhand Store, which dealt in secondhand merchandise. On November 19, 1960, a man, who was later identified as Aldridge, entered the store and asked to see a soldering iron. He was dissatisfied with the one which was shown him and left the premises. He returned in about 30 minutes and told Mrs. Zaretsky that he would take the soldering iron. He then asked her if she had change for $20. She answered that she did not. Aldridge left and again returned. He gave Mrs. Zaretsky a one-dollar bill. She wrapped the soldering iron, placed it on the counter, and went to the cash drawer to procure the change due the customer. Suddenly Aldridge struck her with a hard instrument several times. She apparently lost consciousness. She sustained a skull fracture and lacerations of the head. She was hospitalized as a result for two weeks. Approximately $15 was taken from the cash drawer. Mrs. Zaretsky was positive in her identification of Aldridge as her assailant.

A prosecution witness, Dennis Sweeney, who operated a café on the same street about 90 feet from Mrs. Zaretsky's store, testified that he was standing outside his place of business and upon hearing a commotion coming from the direction of the store he looked and saw a Negro coming from the store carrying a lug wrench. He could not see the man's face but observed that he got into a 1949 or 1950 Dodge car and as he got into the car he "hollered" to the man in the car to take off. Sweeney wrote down the number of the car, which was afterwards identified as Perry's car. Later Aldridge and Perry were apprehended by the police. A soldering iron like the one Mrs. Zaretsky was selling at the time of the incident was found under the passenger's side of the front seat of Perry's car.

Defendant Perry testified that appellant Aldridge was with him in the automobile and that he stopped the car to let Aldridge go to the store; that he did not know what store he went to; that he turned on the car radio while appellant was gone and that appellant came back to the car and said, "Let's go" and they drove off; that he did not see anything in appellant's hand as he got into the car.

During the trial a statement made by appellant's codefendant Perry was read to the jury. Before it was read the trial judge instructed the jury that the statement could not be used against Aldridge. In it Perry stated in response to a question, "What do you know about him? [Aldridge] . . . Nothing, except he works at this place on K Street. I know he has a police record because the officer told me when they brought him over here."

No objection was made at the time, but as soon as the reading of Perry's statement was completed appellant's counsel accused the deputy district attorney of prejudicial misconduct and made a motion for a mistrial. The matter was taken under submission and the jury excused for the night. The mistrial was refused, and the next morning the court gave a carefully worded and detailed instruction to the jury to the effect that no part of the statement could be considered as evidence against appellant and concluded the instruction as follows: "You are not to consider anything that Perry stated in that statement in the case of *People* v. *Aldridge,* and you are not to consider anything that Perry told some policeman about Aldridge. That would be a complete and absolute violation of your oaths as jurors. So I tell

you that and I expect you to live up to this instruction and demand that you do. That is all."

■ We are satisfied that error was committed by the deputy district attorney in having read to the jury the portion of Perry's statement above quoted. The prosecutor was not unaware of the contents of the statement and of the fact that it should not have been read to the jury. It appears from the record the appellant's counsel had not been given a copy of Perry's statement and was not aware of the statement above quoted. It requires no argument that the statement by Perry that he knew appellant had a police record because the officer had told him so was highly prejudicial to appellant, for as stated by the trial judge, "the major conclusion that can be drawn from the statement of the defendant Perry is that Aldridge is guilty."

If the instant case were closely balanced and the evidence of appellant's guilt were not so overwhelming, we would be disposed to hold that the above error required a reversal of the judgment. But in view of the evidence in the record, we do not believe there would have been a different result in the absence of such error. The identification of appellant by the victim was clear and positive. A Negro was seen leaving the store and entering Perry's car. Perry testified to appellant's having gone into a store and coming back to the car. A soldering iron similar to the one sold by the victim was found under the seat of the car. These facts and other evidence in the record make the case one in which, after an examination of the entire cause, including the evidence, we cannot say that the error complained of has resulted in a miscarriage of justice. (Cal. Const., art. VI, § 4½.)

■ One further point must be discussed. Section 654 of the Penal Code provides, "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other. . . ." This section prohibits the double punishment of an accused when he has committed but a single act even though such act violates two or more separate sections of the Penal Code. (*People* v. *Smith* (1950) 36 Cal.2d 444, 448 [224 P.2d 719].)

■ Where the force relied upon to establish the robbery is the same as that required to prove the assault the accused

cannot be punished for both acts without violating section 654 of the Penal Code.

We believe that under the rule laid down in *People* v. *Logan,* 41 Cal.2d 279 [260 P.2d 20], it must be held that appellant's conviction of both offenses charged cannot stand. In that case the court said at page 290: "It is apparent from the descriptions of the criminal transaction in the testimony of the victim and the confessions and admissions of the defendant that the striking of the victim with the baseball bat and the taking of her purse constituted a single, indivisible transaction. The one act of inflicting force with the bat cannot both be punished as assault with a deadly weapon and availed of by the People as the force necessary to constitute the crime of robbery, for 'co-operative acts constituting but one offense when committed by the same person at the same time, when combined, charge but one crime and but one punishment can be inflicted.' (*People* v. *Clemett* (1929) 208 Cal. 142, 144 [280 P. 681]; *People* v. *Greer* (1947) 30 Cal.2d 589, 604 [184 P.2d 512]; *People* v. *Knowles* (1950) 35 Cal.2d 175, 187 [217 P.2d 1].)"

Respondent attempts to distinguish the *Logan* case by arguing that in the *Logan* case but a single act of force was shown, which act preceded the taking of the victim's money. Respondent states: "[I]n the case at bar, appellant exercised force on two occasions. He first assaulted the victim when she was at the cash register. The money was, presumably, taken at this point. The offense of robbery was thus consummated. The victim then pleaded with appellant to leave her alone, whereupon appellant began striking her with a tire iron, rendering her unconscious. This additional exercise of force was not an element of the offense of robbery."

However the record does not support respondent's statement as to the evidence, as the following quotation from Mrs. Zaretsky's testimony shows: "Q. Yes, I understand. You went to the cash drawer? A. Yes. Q. And then you said there was something like a fog? A. Just like a smoke in my eyes and I was a little further from him when he had both hands on my box on the cash register, and I say, 'Please leave me alone. Take anything you want, only leave me alone.' Several times, and all of a sudden he start to strike me here, strike, strike, strike and I said, 'Please take anything you want only leave me alone.' And then I remember I say, 'Leave me alone, leave me alone,' and then I didn't know nothing. I fell down and that is all I know."

[█] We are convinced that the instant case cannot be distinguished from *People* v. *Logan, supra,* and that the following language from page 290 of the *Logan* case is applicable to the instant case: "Since the Legislature prescribed a greater punishment for the crime of robbery by a person armed with a dangerous or deadly weapon (imprisonment in the state prison for not less than five years; Pen. Code, §§ 211a, 213) than for the crime of assault with a deadly weapon (imprisonment in the state prison for not more than 10 years or in the county jail for not more than one year, or fine; Pen. Code, § 245), the robbery must be considered as the more serious offense and the conviction thereof must be affirmed; the conviction for the less serious offense must be reversed. (*People* v. *Knowles* (1950), *supra,* p. 189 of 35 Cal.2d.)"

The judgment of conviction of assault with a deadly weapon is reversed, and the judgment of conviction of robbery is affirmed.

Peek, P. J., and Pierce, J., concurred.