[Crim. No. 4703. First Dist., Div. One. Oct. 22, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. CONSER LEE SHAW, Defendant and Appellant.

Gerald Z. Marer, under appointment by the District Court of Appeal, and Long & Levit for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci, John F. Kraetzer and Edward P. O'Brien, Deputy Attorneys General, for Plaintiff and Respondent.

SIMS, J.—Defendant appeals from the judgment of the trial court sentencing him to state prison for the term prescribed by law for forcible rape in violation of subdivision 3 of section 261 of the Penal Code. The defendant was convicted of this offense and of robbery in the second degree in violation of section 211 of the Penal Code following trial by jury, but the latter conviction was set aside on motion of the district attorney on the grounds that further proceedings on that charge would subject the defendant to double punishment. On his arraignment on an amended information the defendant, in addition to entering a plea of not guilty to each of the foregoing charges, had admitted allegations which charged that he had a prior conviction of robbery in 1957 and a prior conviction of kidnapping in 1959, and that he had served a term of imprisonment for each in the state prison.

Defendant attacks the ruling of the trial court in limiting him to 10 peremptory challenges, its rulings on the admission of evidence, the manner in which it instructed the jury, and asserts allegedly prejudicial misconduct on the part of the prosecutor.

The victim testified she was robbed and criminally assaulted at about 1:30 a.m. on December 8, 1963, in a parking lot as she was about to drive home. She identified defendant as the perpetrator following his apprehension within an hour of the alleged attack, again at a police lineup on December 9th, and finally at the trial.

The defendant claimed that he was elsewhere at the time of the alleged assault and produced witnesses who generally corroborated the activities recited by him, but left him unattended going from one cafe to another restaurant at about the time in question.

The remaining facts surrounding the occurrence insofar as they bear on the issues raised by appellant are hereinafter set forth.

### The Alleged Error in Disallowing More Than Ten Peremptory Challenges

After the defendant had exercised nine peremptory challenges and had examined a juror seated to replace one whom had been excused by the court for cause, and after the People had expressed satisfaction with the jury as constituted, the court stated: "What says the Defendant? This is your last challenge Mr. Larson." The defendant excused the juror, and thereupon a new juror was sworn and examined by both sides.

When the People expressed satisfaction with the jury, the court ordered the clerk to swear the jurors to try the case. The defendant then sought to exercise a further peremptory challenge to a juror who had been seated following the exercise of his ninth challenge.[1]

Defendant claims he was deprived of his rights under section 1070 of the Penal Code which provides: "If the offense charged be punishable with death, or with imprisonment in the state prison for life, the defendant is entitled to twenty and the state to twenty peremptory challenges. On a trial for any other offense, the defendant is entitled to ten and the state to ten peremptory challenges." The failure to grant a defendant the prescribed number of peremptory challenges when the record reflects his desire to excuse a juror before whom he was tried is reversible error. (*People* v. *Diaz* (1951) 105 Cal. App.2d 690, 695 [234 P.2d 300], hearing in S. Ct. den. Aug. 23, 1951; *People* v. *O'Connor* (1927) 81 Cal.App. 506, 519-521 [254 P. 630] ; *People* v. *O'Neil* (1882) 61 Cal. 435, 436; *People* v. *Harris* (1882) 61 Cal. 136, 137; cf. *People* v. *Bugg* (1947) 79 Cal.App.2d 174, 176 [179 P.2d 346] ; *People* v. *Aguinaldo* (1934) 3 Cal.App.2d 254, 260 [39 P.2d 505] ; and *People* v. *Carter* (1961) 56 Cal.2d 549, 573-574 [15 Cal.Rptr. 645, 364 P.2d 477], and note 3 U.C.L.A. L.Rev. 384-387; and see *Swain* v. *Alabama* (1965) 380 U.S. 202, 211-212 [85 S.Ct. 824, 831, 13 L.Ed.2d 759, 766-744] for the historical background of the peremptory challenge.)

He first points out that under the charge of forcible rape he was punishable by, and in fact was sentenced to, imprisonment in the state prison for a term of not less than three years (Pen. Code, § 264), which under the provisions of section 671 of the Penal Code subjected and subjects him to a maximum term of imprisonment in the state prison for life. (*People* v. *Bales* (1961) 189 Cal.App.2d 694, 705 [11 Cal.Rptr. 639] (double punishment, rape including incest) ; see also *People* v. *Harmon* (1960) 54 Cal.2d 9, 16-17 [4 Cal.Rptr. 161, 351 P.2d 329] (construction of Pen. Code, § 4500) ; *In re Larsen*

---

[1] The record reflects: "MR. LARSON [attorney for defendant]: One minute, Your Honor—the Defendant would like to exercise a challenge and excuse Mr. Blodgett. THE COURT: On what grounds? MR. LARSON: Peremptorily, Your Honor. THE COURT: What grounds? MR. LARSON: On the ground that we have twenty (20) challenges and we have used ten (10). THE COURT: The Court will find that you are entitled to ten (10) and you have used ten (10)—and will disregard the challenge. The Clerk will swear the jury. MR. LARSON: I should also object to the swearing of the jury at this time, Your Honor. THE COURT: The record will note your objection, Mr. Larson. MR. LARSON: Thank you."

(1955) 44 Cal.2d 642, 647-648 [283 P.2d 1043] (upholding constitutionality of the indeterminate sentence law); and *People* v. *Collins* (1963) 220 Cal.App.2d 563, 580-581 [33 Cal.Rptr. 638] (multiple punishment, burglary including three other offenses incident to the same objective).) He also alleges that at the start of the trial under the same principle he was also subject to punishment for a maximum term of life imprisonment if convicted of robbery (Pen. Code, §§ 213 and 671; *People* v. *Aldridge* (1961) 197 Cal.App.2d 555, 560 [17 Cal.Rptr. 304] (double punishment, robbery including assault with a deadly weapon)); and finally that in view of his admission of the two prior felony convictions as alleged, he was subject, if convicted of either of the offenses charged, to imprisonment in the state prison for life as an habitual criminal pursuant to the provisions of section 644 of the Penal Code.

The question presented by the sentences for the principal offenses—not less than three years for rape (Pen. Code, § 264) or not less than five years, or one year, for robbery (Pen. Code, § 213) came before the court in *People* v. *Clough* (1881) 59 Cal. 438 under similar provisions of section 1070 as it read prior to its amendment in 1927. The court stated: ''It is claimed on this appeal, that robbery is *punishable for life*; that the defendant was entitled to twenty peremptory challenges, and that the Court erred in its ruling. The section in question has never received a judicial interpretation, and the point is a new one. We are called upon to decide it without precedent or authority to aid us. 'If the offense charged is punishable with death or with imprisonment in the State Prison for life, the defendant is entitled to twenty peremptory challenges.' Such is the language of the section now under consideration. We have reached the conclusion that it is only in capital cases, or cases in which a life sentence is *in terms* affixed by the Legislature as the punishment of the crime, that the defendant is entitled to twenty peremptory challenges. Robbery is not such a crime. It is true that the maximum punishment is not designated by the statute, but the minimum is, and that need not be for a longer time than one year.'' (59 Cal. pp. 441-442.) This principle, although questioned on occasion, has been uniformly followed in this state. (*People* v. *Riley* (1884) 65 Cal. 107, 108 [3 P. 413] (robbery); *People* v. *Fultz* (1895) 109 Cal. 258, 259 [41 P. 1040] (rape); *People* v. *Logan* (1899) 123 Cal. 414, 416 [56 P. 56] (rape); *People* v. *Sullivan* (1901) 132 Cal. 93, 94 [64 P. 90] (burglary);

*People* v. *Scott* (1914) 24 Cal.App. 440, 442 [141 P. 945] (rape); *People* v. *Purio* (1920) 49 Cal.App. 685, 687 [194 P. 74] (robbery).)[2]

Defendant seeks to avoid the ruling of the foregoing line of cases because they were decided when the provisions of section 671 of the Penal Code read as follows: "Whenever any person is declared punishable for a crime by imprisonment in the state prison for a term not less than any specified number of years, and no limit to the duration of such imprisonment is declared, the court authorized to pronounce judgment upon such conviction may, in its discretion, sentence such offender to imprisonment during his natural life, or for any number of years not less than prescribed." (As enacted 1872 and until amended Stats. 1951, ch. 1674, § 1, p. 3830.) He also points out that those cases arose before the passage of provisions providing for indeterminate sentences to be fixed administratively. (Stats. 1917, ch. 527, p. 665; Pen. Code, §§ 1168 and 3020-3025; see *People* v. *Gonzales* (1918) 36 Cal.App. 782 [173 P. 407].) He relies on the cases first referred to above for the proposition that now a "not less than sentence" is automatically a life sentence until otherwise ordered by the Adult Authority. In *Purio, supra,* after reaffirming the principle of *Clough,* it was stated: "It may be added that the recent change in the law providing for an indeterminate sentence has not affected the rule in reference to the number of peremptory challenges." (49 Cal.App. at p. 687.) Defendant contends this language is predicated upon the author's misconception of the indeterminate sentence law as reflected by his opinion in *Gonzales, supra,* where he stated: "Indeed, where there is a maximum and minimum term prescribed by the law, it was left prior to said act of 1917 to the discretion of the court to impose the punishment within these limits. That was the case in nearly all the penitentiary offenses, but

---

[2]This rule appears to be limited to California. It is stated generally: "Where the right is given in the case of trials for offenses punishable in a certain manner, the right exists if the offenses charged may be so punished, although the case is one where the court may impose a lighter punishment" (50 C.J.S. Juries, § 280 c.(1), fn. 27, p. 1070); and ". . . [an] accused is entitled to the number of challenges corresponding to the greatest punishment that may be imposed for the offense charged" (*id.* § 281 b.(2), fn. 89, pp. 1071, 1075; see also *Dull* v. *People* (N.Y. 1847) 4 Den. 91, 92-93). Attempts to extend the California rule have met with criticism and outright rejection. (*Brough* v. *State* (1940) 55 Ariz. 276, 279-280 [101 P.2d 196, 197-198], cert. den. 311 U.S. 648 [61 S.Ct. 38, 85 L.Ed. 414]; *State* v. *Roberts* (1937) 91 Utah 117, cf. pp. 119-121 and pp. 126 and 131 [63 P.2d 584, cf. pp. 585-586 and 588-589]; *State* v. *Squier* (1936) 56 Nev. 386, 399 [54 P.2d 227, 232].)

the purpose of the new law was to take from the trial judge the discretion of fixing definitely the term of imprisonment and to vest it in the prison directors within the limits prescribed by the Penal Code.

"We can see no merit in the claim that the law does not prescribe the maximum penalty for the crime of robbery. The maximum penalty 'prescribed by the law' is the extreme penalty that the law authorizes to be imposed—that is, life imprisonment in the present case, as we have seen.

"The two sections of the Penal Code may be read together and they amount to this: 'Robbery is punishable by imprisonment in the state prison not less than one year and it may be for life.'" (36 Cal.App. at p. 784.)

This interpretation is not necessarily inconsistent with the authorities which hold that a prisoner who may receive a maximum punishment of a life sentence may be treated as undergoing such until a sentence is fixed at a lesser term (*Harmon* and *Larsen, supra*), or cases which hold that a conviction which subjects the offender to a possible life sentence carries the possibility of greater punishment than one with a fixed term, and the latter must therefore yield to the former if double punishment would violate the provisions of section 654 of the Penal Code. (*Bales, Collins* and *Aldridge, supra*.)

In *People* v. *Ralph* (1944) 24 Cal.2d 575 [150 P.2d 401], the court had to determine the meaning of the term "sentenced to . . . imprisonment for life" as used in the Youth Authority Act. (Welf. & Inst. Code, § 1700 et seq., particularly § 1731.5, subd. (b).) The court noted the apparent conflict between the principle asserted by defendant herein, and that contained in *Clough* and its progeny, and observed: "The two lines of decisions hereinabove discussed are obviously conflicting insofar as their analogous application to the question involved in the cases of these appealing defendants is concerned. This, however, does not mean that either line need be overruled in order to dispose of the pending cases. Each line has become established over a long period of years as defining the law in the particular matters to which it respectively relates. The question before us is not one which is necessarily concluded by either of the two series of holdings. It is proper, therefore, in reaching a conclusion, to consider the purpose of the particular statute and certain fundamental rules governing the construction of criminal laws generally." (24 Cal.2d at p. 580.)

The precept that each reference to life imprisonment must

be interpreted in its own content, is further exemplified by the principle that the provisions of section 669 of the Penal Code do not preclude the sentencing court from making an indeterminate sentence which may carry a maximum penalty of life imprisonment consecutive to another sentence. (*In re Quinn* (1945) 25 Cal.2d 799, 801-805 [154 P.2d 875]; and *People* v. *Kostal* (1958) 159 Cal.App.2d 444, 453-455 [323 P.2d 1020].) The applicable prohibitory phrase in section 669 is ''if the punishment for any of said crimes is expressly prescribed to be life imprisonment, . . .'' This language is similar to that of *Clough* which recites ''cases in which a life sentence is *in terms* affixed by the Legislature as the punishment of the crime.''

*Quinn* recites that: ''There is no merit in petitioner's contention. Certainly an indeterminate sentence without a fixed maximum is regarded for certain purposes as having the effect of a life sentence until and unless the prison term board has acted and fixed a term for years. (*People* v. *Ralph* (1944) 24 Cal.2d 575, 578 [150 P.2d 401]; *People* v. *Jones* (1936) 6 Cal.2d 554, 556 [59 P.2d 89]; *People* v. *McNabb* (1935) 3 Cal.2d 441, 456-457 [45 P.2d 334]) but this proposition of law does not preclude our recognizing the reality that, in the absence of action by the board, an indeterminate sentence *is an indeterminate sentence*. It is neither a life sentence nor a fixed term sentence; it is entitled to recognition as a distinct *species intelligibilis*. The fact that for some purposes it has the legal effect of a life sentence does not mean that it must be regarded as the equivalent of a life sentence for all purposes. (*People* v. *Ralph* (1944), *supra*, at pp. 578-582 of 24 Cal.2d.) A defendant against whom such a judgment has been pronounced may or may not be required to spend the entire term of his natural life in prison.'' (25 Cal.2d at pp. 800-801.)

*Kostal* establishes that an indeterminate sentence with a maximum term of life imprisonment did not become ''life imprisonment'' within the meaning of section 669 because of the amendments to section 671 of the Penal Code in 1951 (Stats. 1951, ch. 1674, p. 3829) which recast it to read: ''Whenever any person is declared punishable for a crime by imprisonment in the state prison for a term not less than any specified number of years, and no limit to the duration of such imprisonment is declared, punishment of such offender shall be imprisonment during his natural life subject to the provisions of Part 3 of this code.''

It is concluded that the right to 20 peremptory chal-

lenges is not available where the punishment for the offense charged is an indeterminate sentence which may be fixed at less than a life term. As stated in *Sullivan, supra*: "The construction thus given to the section [§ 1070] was made . . . years ago; and as the legislature has not seen fit to make a change in the statute, we do not feel authorized to recede from the construction then given." (132 Cal. at p. 94.)

There remains for consideration the contention that the possibility of punishment as an habitual criminal establishes that the defendant is entitled to the 20 peremptory challenges. As originally presented to this court the record reflected the separate convictions for robbery and kidnapping referred to above, and defendant's admission that he had served a term of imprisonment for each in the state prison. From the different dates in the amended information it was apparently assumed by all concerned with the appeal[3] that defendant not only had been "previously twice convicted upon charges separately brought and tried" within the provisions of section 644, subdivision (a), of the Penal Code, but also, as recited therein, had "served separate terms therefor in . . . [the] state prison." It was therefore concluded that as he stood trial for a third felony of a class described therein he was subject, if found guilty, to "imprisonment in the state prison for life" as prescribed by that section.

 Following the granting of petitions for rehearing in this matter the respondent lodged with this court certified copies of abstracts of judgment which reflect that the terms served for the aforementioned convictions of robbery and kidnapping were expressly made concurrent (the sentence for the former offense was imposed, following revocation of probation, at the same time as that for the latter offense), and a certified copy of the sentence data maintained by the Department of Corrections which reflects that in 1963 his terms were fixed at seven years each to run concurrently, and that he was subsequently paroled the same year. Judicial notice may be taken of the foregoing records. (Code Civ. Proc., § 1875, subd. 3; *People* v. *Rojas* (1962) 57 Cal.2d 676, 679-680 [21 Cal.Rptr. 564, 371 P.2d 300]; and *Chas. L. Harney, Inc.* v.

---

[3]The record does not reflect that this question was presented by defendant's request for an additional peremptory challenge, or otherwise raised or considered by the trial court. It cannot be ascertained therefrom whether defendant's request was based on (1) the maximum life sentence for each of the offenses charged, (2) the possibility of a life sentence as an habitual criminal, or (3) the contention that he was entitled to 10 challenges on each count, or (4) any combination of the foregoing.

*State of California* (1963) 217 Cal.App.2d 77, 85-86 [31 Cal.Rptr. 524].) No issue was joined in the lower court or in the briefs or oral arguments on appeal as to the status of the sentences served by appellant for his prior convictions. The data has now been appropriately drawn to the attention of the court and appellant has had adequate notice and opportunity to be heard on both the question of the propriety of considering these facts, and the question of the effect they have on the issues previously considered. (See *Flores* v. *Arroyo* (1961) 56 Cal.2d 492, 496-497 [15 Cal.Rptr. 87, 364 P.2d 263].) Appellant's objections that this court should not consider new points urged for the first time on rehearing (*Prince* v. *Hill* (1915) 170 Cal. 192, 195 [149 P. 578] ; *People* ex rel. *Dept. Public Works* v. *Mascotti* (1962) 206 Cal.App.2d 772, 779 [23 Cal.Rptr. 846, 24 Cal.Rptr. 679] ; and see 3 Witkin, Cal. Procedure (1954) Appeal, § 203, subd. (c), p. 2407), must yield to the exigencies of the situation which prescribe that the original opinion be corrected to deal with the true facts. The situation is analogous to that where the question of jurisdiction has been considered for the first time on rehearing. (*Sime* v. *Malouf* (1949) 95 Cal.App.2d 82, 116 [212 P.2d 946, 213 P.2d 788].) In most of the authorities (but see *Merchants' Ice & Cold Storage Co.* v. *Globe Brewing Co.* (1946) 73 Cal.App.2d 828, 837-838 [167 P.2d 503]), wherein the judgment has been affirmed, the appellant is seeking to launch a new arrow against an adversary protected by the buckler of an existing opinion. Herein, however, the appellate court has proposed a reversal on a hypothesis which is contrary to true facts, which, when they appeared at a new trial would negate the necessity for the relief which the reversal was designed to provide. The failure of respondent to bring this matter to the court's attention at an earlier stage of the proceedings should not be a ground for the perpetuation of an error which this court still has power to correct.

Attention is therefore directed to the question of whether or not defendant in fact was subject to "imprisonment in the state prison for life" under the provisions of Penal Code section 644, subdivision (a), at the time the jury was selected for his trial on the charges which are the subject of these proceedings. The availability of the sentence data on the prior charges makes it unnecessary to consider whether the allegations of the amended information would fail to sustain sentencing as an habitual criminal because of a lack of allega-

618

tions of "separate terms." (See *People* v. *Propp* (1965) 235 Cal.App.2d 619, 634 [45 Cal.Rptr. 690]; and *People* v. *Dunlop* (1951) 102 Cal.App.2d 314, 317 [227 P.2d 281]; and cf. *In re Gardo* (1952) 108 Cal.App.2d 615, 616 [239 P.2d 77].) ■ In the absence of such an allegation the admission of defendant that he "served a term of imprisonment therefor in the state prison" in respect of each of the prior convictions cannot be construed as an admission that the terms were in fact separate. (*People* v. *Collins* (1964) 228 Cal.App.2d 460, 465 [39 Cal.Rptr. 595], hearing by Supreme Court denied Sept. 10, 1964. ■ It is established that concurrently served terms do not satisfy the requirements of subdivision (a) of section 644 of the Penal Code. (*People* v. *Collins, supra,* 228 Cal.App.2d 460, 464; *People* v. *Sukovitzen* (1955) 138 Cal.App.2d 159, 162-164 [291 P.2d 107].)

Defendant has further requested us to take judicial notice that as a condition of probation on the earlier prior conviction, he was ordered to spend 12 months in the county jail. ■ Jail time cannot be considered as a term served under section 644. (*In re Wolfson* (1947) 30 Cal.2d 20, 26 [180 P.2d 326]; *In re Gardo, supra,* 108 Cal.App.2d 615, 616.) ■ The service of that probationary jail sentence cannot therefore make separate what are otherwise concurrent prison terms. The statute is generally designed to provide increased penalties for recidivists (see *In re McVickers* (1946) 29 Cal.2d 264, 270 [176 P.2d 40]), but it appears to be particularly drafted to depend on the offender's demonstrated immunity to separate punishments which have been imposed for prior offenses, rather than on the mere prior convictions themselves. It is therefore fitting that time spent in serving overlapping concurrent sentences be deemed one term, regardless of what may be the effect of time served on such sentences severally where the overlap is not, as here, complete.

■ From the foregoing it is clear that defendant at the time the jury was impaneled was not subject to possible "imprisonment in the state prison for life" under the provisions of section 644, subdivision (a), of the Penal Code, if convicted of either or both of the charges of which he stood accused. It is therefore unnecessary to determine whether such a status would entitle him to 20 peremptory challenges, or whether or not he waived any right to assert this contention by failure to assert it in the lower court.

■ Defendant attempted to exercise an eleventh peremptory challenge in spite of the fact that prior to the exercise of

his last previous challenge the court had advised him it was his last. He thereupon found himself, on the denial of that challenge, with a juror who may have been unfavorably influenced by the challenge. (See *People* v. *Diaz, supra,* 105 Cal.App.2d 690, 696.) The record on *voir dire* further reflects that this juror knew a good many of the deputy sheriffs in the county through service on the sheriff's reserve for three years during the war. He subsequently became foreman of the jury.

These facts might be used to show possible prejudice if error had been committed in denying an authorized peremptory challenge. (See Const., art. VI, § 4½; but cf. *People* v. *Diaz, supra,* 105 Cal.App.2d 690, 696, indicating prejudice as a matter of law in such event.) Under the circumstances of this case they do not of themselves, as asserted by defendant, demonstrate that he was denied a fair trial, and is therefore entitled to a reversal. No attempt was made to show actual bias on the part of the juror and the facts stated do not constitute implied bias (cf. Pen. Code, § 1074; and see *People* v. *Wilkes* (1955) 44 Cal.2d 679, 685 [284 P.2d 481]). Furthermore, as noted above, the juror in question as well as the juror in respect of whom defendant exercised his tenth challenge were both in the box when the tenth challenge was exercised after the judge's admonition. To relieve a party of his mistake, if it be such under circumstances such as this, would be to invite such tactics in the future on a more calculated basis.

There was no error in connection with the impanelment of the jury.

### Alleged Errors in the Admission of Evidence

Appellant states, "The trial court erred in admitting against appellant evidence illegally obtained and illegally searched."

(A) It is first alleged that defendant was arrested without probable cause.

██ The evidence reflects that following a report by the victim, a description was broadcast. An officer of the Richmond Police Department saw defendant, who answered the description, and another man walking on a street in the neighborhood. He asked the defendant for identification and detained him until another officer who had interviewed the victim could arrive. When the latter came on the scene, he asked the defendant to show his money. It included 14 pennies which were the same number of pennies which the victim had reported had been taken from her. The defendant was requested to accompany the officers to confront the complainant.

The trial court heard testimony out of the presence of the jury[4] and concluded that the arrest was legal whether made before or after he was identified. Defendant contends that the circumstances are similar to those in which it has been found an arrest occurred with the primary detention (see *People* v. *Gibson* (1963) 220 Cal.App.2d 15, 21 [33 Cal.Rptr. 775]; *People* v. *Corrao* (1962) 201 Cal.App.2d 848, 852 [20 Cal.Rptr. 492] and *Jackson* v. *United States* (1964) 336 F.2d 579, 580), and that he was arrested when first interrogated and directed to wait for the second officer, or at least no later than when he entered the car. The question of consent is a question of fact to be determined in the light of all the circumstances. (See *People* v. *Bilderbach* (1965) 62 Cal.2d 757, 762-763 [44 Cal.Rptr. 313, 401 P.2d 921]; *People* v. *Burke, supra,* 47 Cal.2d 45, 49 and *People* v. *Michael* (1955) 45 Cal.2d 751, 753-754 [290 P.2d 852]; and cf. *People* v. *Haven* (1963) 59 Cal.2d 713, 717-719 [31 Cal.Rptr. 47, 381 P.2d 927] and *Castenada* v. *Superior Court* (1963) 59 Cal.2d 439, 442-444 [30 Cal.Rptr. 1, 380 P.2d 641].) It cannot be said that the evidence requires a finding that defendant was arrested prior to his identification.

[4]The officer testified: ''A. I asked him would he come with me to Seventh and Macdonald for identification. At first he hesitated, and then— Q. Why? A. Well, he stated that he didn't want to get into the police vehicle—because the last time he had been in he had stayed in jail for three (3) days or so. Q. All right, and what did you tell him then, Officer? A. I informed him that if he didn't do anything that he wouldn't have anything to worry about, and that if he wasn't responsible then he wouldn't be detained any longer. Q. And, what did he say then? A. He said 'Well, let's go,' and he got into the police vehicle.'' . . . ''I asked him would he come down to Sixth and Macdonald for identification purposes. Q. And, did he do so? A. At first he hesitated—and then he did.''

Subsequently the defendant testified as follows: ''Q. And, then he told you that you would not be detained if this lady didn't identify you, isn't that right, Mr. Shaw? A. Not exactly like that. Q. Well, it was the general meaning, that they couldn't keep you if she said that you weren't the man. A. I'm not going to—I couldn't accept that as the general meaning. The Court: Well, tell us, what did he say? The Witness: Because the way that the man spoke to me—it was more so a threat to come along, as it were—an order. I didn't have no other choice. Miss Snyder: Q. You did go along? A. Yes, I went along.''

On rebuttal a second officer testified: ''Q. I'll ask you, Officer, whether or not the defendant, in response to a suggestion that he go to the scene where the victim was to identify him or not—that after he had been told that he could be released if he were not identified—I'll ask you whether or not he didn't say 'Hell, let's get up there?' A. I don't remember the exact words, but he was insisting on going up there—because he wanted to be released then. Q. And, did he state further at that time 'Remember, if she doesn't identify me—I get to go?' A. Words to that effect, yes.''

In any event, it appears that the officers were doing no more than has been suggested by our Supreme Court. (*People v. Mickelson* (1963) 59 Cal.2d 448, 454 [30 Cal.Rptr. 18, 380 P.2d 658].) ▇▇ Furthermore, it appeared that a felony had been committed, and from the description given coupled with the identity of the number of pennies, and the proximity to the scene, there was reasonable cause to believe that the defendant had committed it. Therefore, there was probable cause to arrest the defendant at the time even if he had not consented to accompany the officers. (Pen. Code, § 836, subd. 3; *People v. Schader* (1965) 62 Cal.2d 716, 722-726 [44 Cal.Rptr. 193, 401 P.2d 665]; *People v. Ingle,* 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577].) It is not profitable, therefore, to speculate as to whether or not he would in fact have been arrested had he refused to accompany the officers.

For the foregoing reasons it cannot be said that his subsequent identification by the victim on that evening, and at a subsequent lineup, or the use of tests disclosing seminal stains on the shorts taken from him after his arrest, were the product of an illegal arrest. (Cf. *Mapp v. Ohio* (1961) 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933]; *Ker v. California* (1963) 374 U.S. 23 [83 S.Ct. 1623, 10 L.Ed.2d 726]; *Wong Sun v. United States* (1963) 371 U.S. 471 [83 S.Ct. 407, 9 L.Ed.2d 441]; *People v. Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513]; *Stoner v. California* (1964) 376 U.S. 483 [84 S.Ct. 889, 11 L.Ed.2d 856]; *Fahy v. Connecticut* (1963) 375 U.S. 85 [84 S.Ct. 229, 11 L.Ed.2d 171].)

(B) Secondly, it is contended that evidence of his confrontation with the complainant was improper because defendant was not represented by counsel or advised of his right thereto. (See *Gideon v. Wainwright* (1963) 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733]; *Escobedo v. Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]; *People v. Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].) Defendant makes a plausible argument to the effect that if a suspect needs counsel before being interrogated he needs the advice of counsel to insure that he is identified under circumstances which are free from passion and emotion, and in a neutral environment. He urges a blanket condemnation of identification by the victim on the street, or at the scene. Such a proposal not only goes beyond existing decisions concerning the right to counsel, but offends the suggestion made in *People v. Mickelson, supra,* 59 Cal.2d

448, 454, and the principle that the defendant has no right to refuse to be identified. (See *People* v. *Lopez* (1963) 60 Cal.2d 223, 244 [32 Cal.Rptr. 424, 384 P.2d 16] ; *People* v. *Branch*, 127 Cal.App.2d 438, 440 [274 P.2d 31].) Respondent points out that a delay in identification, which may be negative as well as positive, would be unfair to the innocent, and would unduly delay investigation to determine the true offender if the prior suspect were cleared by the confrontation. ▆ The circumstances of the identification can always be considered by the trier of fact in determining what weight it should be given. (*People* v. *Knowles* (1950) 35 Cal.2d 175, 179 [217 P.2d 1], cert. den. (1950) 340 U.S. 879 [71 S.Ct. 117, 95 L.Ed. 639].)

(C) He further asserts that his underwear was illegally seized, and that in any event it should not have been subjected to tests without a search warrant.

▆ The seizure of the underwear, in view of the nature of the offense charged, was justified as would be the seizure of a blood-stained shirt tending to connect a person with an offense in which blood had flowed. (See *People* v. *Teale* (1965) 63 Cal.2d 178, 190 [45 Cal.Rptr. 729, 404 P.2d 209].)

▆ The fact that the evidence was not taken from the person of the defendant until arrival at the police station, presumably for reasons of modesty, does not make the search and seizure at a place remote from the arrest. The right to seize arose at the time of the arrest, it was effected by the seizure of defendant and his clothes, and the subsequent separation of the defendant and the seized garments does not make the seizure and retention of the latter illegal.

Defendant relies upon *United States* v. *Lefkowitz* (1932) 285 U.S. 452 [52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775] ; and *Gouled* v. *United States* (1921) 255 U.S. 298 [41 S.Ct. 261, 65 L.Ed. 647], for the principle that neither a legal arrest nor even a search warrant will justify the seizure and use of materials which are merely evidence, as distinguished from contraband, fruits of the crime, or means and instrumentalities of the crime. (See *Morrison* v. *United States* (1958) 262 F.2d 449, 451.) It is unnecessary to determine to what extent this rule is dependent on the Fifth Amendment of the United States Constitution, or on principles prohibiting indiscriminate searches or seizures, or to what extent it is applicable in this state. In *Preston* v. *United States*, 376 U.S. 364 [84 S.Ct. 881, 11 L.Ed.2d 777], it is recognized in the unanimous opinion of the court that, ''The rule allowing contemporaneous

searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, *as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where* the weapon or *evidence is on the accused's person* or under his immediate control." (376 U.S. at p. 367; italics added.)

 The evidence having been legally seized its subsequent examination and analysis does not offend any constitutional principles. *Preston* v. *United States, supra,* 376 U.S. 364 and *People* v. *Burke,* 61 Cal.2d 575 [39 Cal.Rptr. 531, 394 P.2d 67] involve searches of articles which were not properly seized. It is unnecessary to determine whether analysis constitutes a search, because, as noted above, the material analyzed was properly in custody of the law.

 It is concluded that there was no error in the receipt of the evidence referred to in the foregoing.

### Alleged Errors in the Instructions

 (A) Defendant would predicate error on the reading of an instruction, admittedly correct, concerning the effect of defendant's prior felony convictions on his credibility, separate and apart from other instructions concerning credibility. He asserts that undue emphasis and weight thereby were given to those prior convictions. The court did instruct the jury that they were "not to single out any certain sentence, or any individual point or instruction, and ignore the others, but you are to consider all the instructions and as a whole, and to regard each in the light of all the others." (See CALJIC No. 5.) It is presumed that the jury followed this instruction. (*People* v. *Robles* (1962) 207 Cal.App.2d 891, 897 [24 Cal.Rptr. 708].) No error is apparent.

 (B) A former victim of the defendant testified that about five years earlier he had attempted to rape her under circumstances and in a manner which were similar to those under consideration. Defendant offered an instruction setting forth six purposes for which evidence of another offense could be considered. (CALJIC No. 33.) The court's instructions only referred to consideration for one of these purposes— plan, scheme, or design. Defendant refers to *People* v. *Lindsay* (1964) 227 Cal.App.2d 482, 504-505 [38 Cal.Rptr. 755] as requiring that the jury consider the evidence for more than one purpose, and claims that the court's instruction here deprived him of a jury trial. (See *People* v. *Costello* (1943)

21 Cal.2d 760, 766 [135 P.2d 164].) Defendant overlooks that the instruction in question is a limiting instruction on the effect which may be given evidence which has been offered, if believed. It does not purport to determine whether such evidence should be believed or not, or what weight it should be given on the issues to which it is pertinent. The failure to give defendant's instruction restricted its use beyond that which defendant suggested, and no error can be predicated thereon.

(C) The court gave the standard cautionary instruction concerning the evidence of a prosecutrix in a rape case. (See *People* v. *Nye* (1951) 38 Cal.2d 34, 40-41 [237 P.2d 1]; *People* v. *Putnam* (1942) 20 Cal.2d 885, 890 [129 P.2d 367].) Defendant contends a separate instruction of the same tenor should have been given in relation to the testimony of the prior victim. No such instruction was requested. The charge given was general in terms and may be interpreted as allowing reference to it in order to attack the credibility of the prior victim if such tactic were desired. It is unnecessary to determine whether or not such an additional cautionary instruction should be given if offered. On the record here no error is shown by the failure of the lower court to give a second cautionary instruction on its own initiative.

### Alleged Misconduct of the Prosecutrix

(A) At the conclusion of the closing argument the deputy district attorney stated: "The Judge, I believe, will tell you that the matter of penalty has no place in your deliberations in this case. And, I would urge you, please, to disregard any question of what may happen to this D.fendant —in the event that you should, please God, convict him. And, I say this sincerely, Ladies and Gentlemen. Take this man off our streets." Defendant asserted, "Your Honor, that's a very prejudicial statement, and has no place in this courtroom," and the court commented: "She has the right to make this argument. Go ahead, ...."

Defendant asserts that the comment was improper because it implied that defendant would rape again if acquitted (see *People* v. *Whitehead* (1957) 148 Cal.App.2d 701, 705-706 [307 P.2d 442]; and *People* v. *Sorenson* (1964) 231 Cal. App.2d 88, 91-92 [41 Cal.Rptr. 657]); and that the use of the phrase "please God" was an improper appeal to the passion and prejudice of the jury (cf. *People* v. *Talle* (1952) 111 Cal.App.2d 650, 673 [245 P.2d 633]). The language, "Take this man off our streets" when taken alone is subject to the

interpretation that it implies the jury should convict because if they failed to do so the defendant would rape again—a form of argument condemned in *Whitehead*. Similarly the phrase "please God" considered alone may unwarrantedly imply that an acquittal would bring divine displeasure, if not retribution, to those responsible for the same. (Cf. *People v. Hail* (1914) 25 Cal.App. 342, 356-363 [143 P. 802].) It is equally open to the interpretation that the utterer was seeking a little spiritual aid for her own cause and spoke the words as an aside. The remarks in question must be viewed in their context. As such they are no more than an admonition not to let considerations of possible punishment interfere with a conviction, otherwise properly entertained, of the defendant's guilt, first, because the law so provides, and secondly, because he should be removed from society. The situation is analogous to that in *People v. Dozier* (1939) 35 Cal.App.2d 49, at page 58 [94 P.2d 598], wherein the opinion recites: "We do not believe that there can be any prejudicial misconduct in the prosecuting attorney admonishing a jury, in the event they believe a defendant guilty beyond a reasonable doubt, of the danger of acquitting him and turning him loose merely because of the persons involved in the crime or the locality in which it occurred or the amount of money involved."

(B) In the course of her closing argument the attorney for the People addressed herself to the defendant's contention that the victim, who admittedly had been drinking during the course of the evening, was too intoxicated to recognize her attacker and subsequently identify the defendant as such. After commenting on some of the evidence bearing upon her sobriety, or lack of it, the attorney stated: "She couldn't identify him.—She was too intoxicated.—This has to be a wrong identification. This is really the meat of this case—the heart of this case, Ladies and Gentlemen. Now, I have never been subjected to a situation like this, which Mrs. Igo had referred to—but I would think that the spectre of this man, forcing himself into my car and on top of me, would sober me up so fast—the adrenalin in my system would completely compensate for whatever alcohol was in it—the fear. And, you can use your common sense as to whether or not this could happen." Defendant, despite lack of objection below, contends that the foregoing, with the exclusion of the last sentence, assumes facts not in evidence, was an improper statement of the personal opinion of the prosecuting attorney,

and by virtue of her sex and personal identification with the example given, was an appeal to the passion and sympathy of the jury. (See *People* v. *Whitehead, supra,* 148 Cal.App.2d 701, 706; and *People* v. *Nolan* (1932) 126 Cal.App. 623, 639-642 [14 P.2d 880].)

There was no evidence in this case concerning the effect of fear upon a person's sobriety either with or without a reaction of the adrenalin in the system. Nevertheless the argument that fear may have an effect on the perception of one whose senses were otherwise dulled by alcohol does not appear to pass the bounds of common understanding. Insofar as it was made personal, the attorney did not profess knowledge, but rather lack of such an experience. The use of the first person really refers to a hypothetical intoxicated woman in the victim's situation. The attorney's sex permitted a personal reference, rather than a more discreet use of the third person as would have been required in the use of the same example by a male prosecutor. Nevertheless any alleged appeal to passion or prejudice from this incident is no greater than that inherent in entrusting the prosecution of an offense of this nature to an attorney of the same sex as the victim. To find error in such practice would necessitate depriving women of the rightful place they have earned for themselves in the professions through years of struggle. There is nothing unfair or prejudicial in the argument made, and the appeal to the jurors to use their common sense demonstrates a lack of intention to inflame or prejudice their minds. ██ ''The prosecutor has a wide range in which to state his views as to what the evidence shows and as to conclusions to be drawn therefrom.'' (*People* v. *Burwell* (1955) 44 Cal.2d 16, 39-40 [279 P.2d 744]; and see *People* v. *Guthaus* (1962) 208 Cal. App.2d 785, 793 [25 Cal.Rptr. 735].)

There was no error in the remarks of the prosecuting attorney.

The judgment is affirmed.

Sullivan, P. J., and Molinari, J., concurred.

A petition for a rehearing was denied November 15, 1965, and appellant's petition for a hearing by the Supreme Court was denied December 15, 1965.