Filed 1/21/14  P. v. Ortiz CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSE A. ORTIZ,<br><br>Defendant and Appellant. | B241320<br><br>(Los Angeles County<br>Super. Ct. No. BA386275) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Monica Bachner, Judge.  Affirmed as modified.

Danalynn Pritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Stephanie A. Miyoshi and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jose Ortiz was convicted of multiple sexual offenses for sexually abusing two children. On appeal, he contends that he received ineffective assistance of counsel because his trial attorney did not object to alleged prosecutorial misconduct and because his counsel improperly conceded his guilt at closing argument. We correct Ortiz's presentence custody credits but otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A full recitation of the facts of this case is unnecessary in light of the issues raised on appeal, which pertain to closing argument and sentencing. Ortiz was charged with five sexual offenses involving two children. At trial, both victims testified in detail to the sexual abuse. Three additional witnesses testified pursuant to Evidence Code section 1108 that as children they had been victims of sexual abuse by Ortiz. Finally, the jury was informed that Ortiz had been convicted of lewd and lascivious conduct upon a child under the age of 14 years with respect to still another victim. Ortiz testified in his own defense and denied all allegations of sexual abuse.

Ortiz was convicted of all charges and was sentenced to a sentence of 255 years to life in state prison. He appeals.

## DISCUSSION

### I. Ineffective Assistance of Counsel Claim: Failure to Object to Alleged Prosecutorial Misconduct

Ortiz claims that the prosecutor committed two types of misconduct in closing argument: first, making an exhortation to convict him to prevent future victims; and second, improperly shifting the burden of proof to him. Ortiz did not object to this argument and therefore has waived any error in the closing argument (see, e.g., *People v. Cunningham* (2001) 25 Cal.4th 926, 989). We address the merits of Ortiz's contentions, however, because he argues that his trial counsel's failure to object constituted ineffective assistance of counsel within the meaning of *Strickland v. Washington* (1984) 466 U.S.

2

668 because there could be no valid tactical reason for failing to object. (See *People v. Nation* (1980) 26 Cal.3d 169, 179.)

A. Call to Convict Ortiz

In her initial closing argument, the prosecutor outlined the "string of damage[d] girls and/or women" Ortiz had left by presenting the six victims (the two who were the subject of the instant charges and the four others concerning whom evidence was received at trial) in chronological order and noting that Ortiz had been committing sexual offenses from the early 1980's through the 2000's. The prosecutor said, "So it's time to stop him. He has to stop abusing children, and you have to stop him. He has to stop destroying lives. And he needs to be held accountable for what he did to [the two victims of the charged offenses]. So I'm going to ask you to do the right thing and convict this man for the things he has done."

In her final closing argument, the prosecutor revisited this argument: "And so you need to stop the defendant before he is allowed to get to the next generation of victims. You need to hold him accountable for what he did to [the two victims of the charged offenses]." Her final words to the jury were, "So in conclusion, I would just ask you to hold the defendant accountable for what he did to [the two victims of the charged offenses]. Stop him from committing crimes against future victims. We've heard from five out of six victims in this case, and you need to hold him accountable so he may not have the opportunity to abuse additional victims."

Ortiz argues that the prosecutor committed misconduct with these statements because they "were calculated to arouse the jury's passions and prejudices. The prosecutor repeatedly urged the jury to punish appellant to protect potential future victims. This argument impermissibly placed upon the jury the responsibility to prevent future harm to other children." We find no misconduct here. The prosecutor argued that holding Ortiz accountable on the charged offenses would have the effect of stopping him from committing still more sexual offenses against children. There was abundant evidence in the record to support the argument that Ortiz was a serial sexual abuser,

committing sexual crimes against six children over multiple decades, and this evidence justified the prosecutor in arguing that Ortiz's course of conduct led to the reasonable belief that he would continue to commit sexual offenses against new victims. "Suggesting that a defendant will commit a criminal act in the future is not an inappropriate comment when there is sufficient evidence in the record to support the statement." (*People v. Hughey* (1987) 194 Cal.App.3d 1383, 1396.) The prosecutor was not offering unsworn testimony that those who commit one sexual crime would likely "do it again," as in *People v. Whitehead* (1957) 148 Cal.App.2d 701, 705, or placing upon the jurors the responsibility for the victims' lives, as in *People v. Pitts* (1990) 223 Cal.App.3d 606, 702, as Ortiz suggests. Instead, the prosecutor repeatedly asked that the jury hold Ortiz accountable for what he had done to the victims in this case and, by doing so, to prevent him from reaching another generation of victims. We find no improper attempt to appeal to sympathy, passion, or emotion here.

### B. Alleged Burden-Shifting

After defense counsel made his closing argument, the prosecutor began her final closing argument by telling the jury that this was her opportunity to respond to the defense's argument. She continued, "And first of all, Mr. Oliver (defense counsel) has a really hard job today because he has to try to explain to you the unexplainable, how this defendant could have—he has to explain how the evidence fails to meet that really high standard. And the fact is the evidence is overwhelming that the defendant committed these crimes." Ortiz argues that with these words, the prosecutor was arguing that the defendant was required to explain how the evidence failed to prove him guilty beyond a reasonable doubt, thus impermissibly shifting the burden of proof. He argues that this case is similar to *People v. Hill* (1998) 17 Cal.4th 800, at pages 831 through 832, in that the prosecutor's words could be understood as suggesting that she did not have the burden of proving every element of the charged offenses beyond a reasonable doubt or claiming that there must be some affirmative evidence demonstrating a reasonable doubt.

4

Taken in the context of the case, we do not believe the prosecutor's statement is susceptible to Ortiz's interpretation. While a defendant may choose to rely upon the state of the evidence and upon the failure, if any, of the People to prove beyond a reasonable doubt every essential element of the charge, in this case, Ortiz did not choose to do that. He took the witness stand and denied all wrongdoing. Once a defendant presents evidence, it is subject to critical examination and comment. (*People v. Chatman* (2006) 38 Cal.4th 344, 403-407.) When the prosecutor made the challenged comments, defense counsel had just finished his closing argument, in which he argued that while there might be a preponderance of evidence of guilt, the People had fallen short of proving that Ortiz committed the charged crimes beyond a reasonable doubt. The prosecutor, in her final summation, responded critically to this contention. Rather than simply arguing that the evidence was sufficient to convict, she framed her argument in terms of sympathy for defense counsel's position: in closing argument, defense counsel was placed by the evidence in the difficult position of explaining how the evidence "fail[ed] to meet that really high standard" of proof beyond a reasonable doubt, when the evidence was in fact overwhelming in nature. With her comment on rebuttal, the prosecutor did not instruct the jury on the law or allocate any burden of proof to the defense, but merely observed that it was a significant challenge for defense counsel to make his argument of insufficient evidence in light of the overwhelming nature of the evidence. Nor did the prosecutor lessen her own burden of proof, for she emphasized that the prosecution's standard of proof is "really high," and her observation was not reasonably likely to have been construed as shifting the burden of proof to the defense. As we do not find any prosecutorial misconduct occurred here, Ortiz's trial counsel was not ineffective for failing to object.

## II.    Ineffective Assistance of Counsel Claim:  Arguing "Against" Ortiz

At closing argument, defense counsel attempted to distinguish between the charged and uncharged offenses and to convince the jury that no matter what it thought about Ortiz or the uncharged offenses, the prosecution had not offered enough evidence

5

to convict him on the charges in the present case: "You know, something I worried about the entire weekend is [that] the prosecutor was going to get up and give a really powerful argument like she did. And it just, like, threw me because there's a powerful case, she's put together a powerful case that Mr. Ortiz committed crimes against these uncharged victims. The problem is that she failed to put together a case that contains proof beyond a reasonable doubt that he committed the specific crimes that he's charged with. Uncorroborated testimony. That's all there is." Ortiz argues that counsel "improperly conceded appellant's guilt" and therefore denied him effective assistance of counsel. He argues that there was no valid tactical reason for making this concession; notes that because Ortiz had denied not only the charged sexual offenses but the uncharged ones as well, counsel was conceding crimes that Ortiz himself had denied; and asserts that the argument undermined him and led the jury to convict him.

"The decision of how to argue to the jury after the presentation of evidence is inherently tactical." (*People v. Freeman* (1994) 8 Cal.4th 450, 498.) Concession of some measure of culpability is not ineffective assistance of counsel when the evidence is strong and the concession is made strategically in an attempt to gain some other advantage. (See, e.g., *People v. Bolin* (1998) 18 Cal.4th 297, 334-335 [concession of some criminal conduct a reasonable trial tactic in light of strong evidence where concession permitted counsel to urge a guilty verdict on lesser included offenses and to preserve credibility in case of a penalty phase].) It is clear from the closing argument that counsel conceded the uncharged acts in an effort to establish a contrast between those offenses—which could not be the basis for criminal liability in the present action—and the charged offenses, which, if proven, exposed Ortiz to hundreds of years in prison. After the opening set forth above, counsel discussed the difference between proof beyond a reasonable doubt and proof by a preponderance of the evidence. He conceded that with respect to the uncharged acts, the prosecutor had met the burden of proof by a preponderance of the evidence, but argued that the same could not be said for the elements of the charged crimes, which had to be proven beyond a reasonable doubt. He said, "It is more likely than not, and that's the standard, that these [uncharged crimes]

6

were committed. Those crimes were committed. But with the crimes charged against the two girls . . . it's an entirely different thing, because it doesn't rise to the level of proof beyond a reasonable doubt. There's no corroboration. There's no proof independent of their word. None. There's no medical evidence. Both of the S.A.R.T. [sexual assault response team] nurses came in and said that there was an examination of the vaginal [and] anal area of these children, and they were normal." Counsel argued that the children were coached to make these allegations; reiterated the absence of medical evidence of abuse; challenged the two victims' credibility in a detailed manner; alleged that the victims had a motive to fabricate their accounts; and, finally, returned to his central theme, that there may have been "a lot of proof of the uncharged crimes, but there's not proof beyond a reasonable doubt" of the charged offenses.

Trial counsel's argument reflected the reasonable tactical decision to cede some ground that was not critical in order to establish some credibility on the part of the defense through candor (see, e.g., *People v. Williams* (1997) 16 Cal.4th 153, 219-220), to highlight the operation of the different burdens of proof at play in the proceeding, and to attempt to create a perception of a distinction between the strength of the evidence of the charged and uncharged offenses. Under the circumstances, conceding some measure of culpability was a valid tactical choice.

### III.    Presentence Custody Credits

As noted by both Ortiz and the Attorney General, Ortiz's presentence custody credits were incorrectly calculated. First, Ortiz was awarded 270 days of actual credit, although the records indicate that he served 316 days prior to sentencing. Also, he received 20 days of conduct credits, but under Penal Code section 2933.1 he was entitled to 47 days of conduct credits. We modify the judgment accordingly.

7

## DISPOSITION

The judgment is modified to reflect 316 days of actual custody credits in addition to presentence credits in the amount of 47 days, for a total of 363 days of presentence custody credits. The clerk of the superior court is ordered to prepare an amended abstract of judgment as set forth in this opinion and to forward a copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


ZELON, J.

We concur:


PERLUSS, P. J.


SEGAL, J.*

---

*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.