Filed 4/30/14  P. v. Bowen CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOEVAN BOWEN,<br><br>        Defendant and Appellant. | A132356<br><br>(City & County of San Francisco<br>Super. Ct. No. 213870) |

Defendant Joevan Bowen was convicted by a jury of first degree murder on a felony-murder theory.  On appeal, he contends the court erred in instructing the jury that he could be convicted on an aiding and abetting theory and in failing to instruct the jury that one of the trial witnesses was an accomplice as a matter of law.  He also argues that the prosecutor committed misconduct by improperly vouching for key prosecution witnesses.  We reject these contentions and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Procedural History and Overview*

The San Francisco District Attorney filed an information charging defendant with first degree murder in connection with the 2003 shooting death of Armando Arce.  (Pen. Code,[1] § 187, subd. (a).)  The district attorney alleged that defendant personally and intentionally discharged a firearm causing injury or death.  (§ 12022.53, subd. (d).)

_____

[1]All further statutory references are to the Penal Code.

1

The case was tried before a jury in 2011. The prosecution's evidence at trial established that the Arce homicide was one of a series of crimes committed in Oakland and San Francisco over the course of an evening and into the following morning in February 2003. Defendant was with a group of men who attempted to rob Arce. Two of those men, Edward Donald Mitchell and Demar Antoine Lacy, were the only witnesses who testified about the circumstances of Arce's murder. Both Mitchell and Lacy testified under a grant of immunity that defendant was the one who demanded money from Arce and shot him. While Mitchell testified that he was a willing participant in the attempted robbery, Lacy disclaimed any involvement. One of the key issues at trial was whether Lacy was an accomplice whose testimony had to be corroborated in order to be relied upon by the jury. In addition, the defense questioned the credibility of the prosecution witnesses and urged that Lacy was the actual shooter based upon statements Lacy made to another inmate while serving time in prison.

The jury found defendant guilty of first degree murder but failed to reach a verdict on the firearm use enhancement. The court sentenced defendant to serve a prison term of 25 years to life.

### Mitchell's Testimony

At trial, Edward Mitchell testified that he was serving a term of 15 years 8 months in prison as a result of a plea. He had been charged with two counts of special circumstances murder and one count of robbery arising out of events that took place in Oakland on the night that Arce was murdered in San Francisco. He entered a plea of guilty to two counts of voluntary manslaughter and one count of robbery with a personal arming enhancement and an on-bail enhancement in exchange for his agreement to give truthful testimony against a codefendant in the Oakland case. The terms of his plea agreement were read to the jury. The prosecutor also disclosed to the jury that Mitchell had been afforded immunity from prosecution in exchange for his testimony against defendant. Mitchell was never charged with any crimes connected to the Arce murder in San Francisco.

2

Mitchell testified that on the evening of February 18, 2003 he was with a group of three other men who committed robberies and shot three people in Oakland. Defendant and Lacy were not with Mitchell and the others at the time the Oakland crimes were committed. After two of the participants in the Oakland crimes were dropped off, Mitchell and another participant in the Oakland crimes, Monterrio Davis, picked up defendant and Lacy. They drove to a location in Oakland where they obtained "ecstasy pills and some weed." The four individuals—defendant, Mitchell, Lacy, and Davis—then drove to San Francisco.

According to Mitchell, while they were in the car they agreed to commit more robberies. They went to a liquor store in San Francisco and saw women who appeared to be prostitutes. Defendant hit one of the women with a gun. The women fled. The men then drove around looking for someone to rob. They saw a man in an alley who they thought was a pimp. Defendant and the other three men exited the car. Defendant had a gun and attempted to rob the victim, Armando Arce. They scuffled and defendant shot Arce. Mitchell testified that it was his intent to assist defendant in the robbery attempt.

### Lacy's Testimony

Demar Antoine Lacy testified at trial under an agreement immunizing him from prosecution for his testimony. The jury was informed of the agreement affording Lacy immunity from prosecution, and the prosecution introduced into evidence the order providing the basis for the grant of use immunity.

Lacy testified that he was in the car with the other three men—defendant, Mitchell, and Davis—but that he went to San Francisco intending only to sell rock cocaine. He claimed that, while he was in the car, he tried to discourage the others from committing robberies.

According to Lacy, they stopped at a liquor store. He went inside and did not participate in an attempt to rob women who were outside the store. After the men left the liquor store, they spotted Arce. Lacy was in the back seat of the car and remained there while the others got out of the car. Lacy eventually got out of the car but remained by the

3

vehicle because he did not want to rob Arce. Lacy testified that Mitchell and defendant accosted Arce. He further testified that defendant shot Arce.

About a week after the shooting, Lacy went to the police and told them what had happened. He was not arrested. Lacy testified in the case against one of the other occupants of the vehicle, Davis, in exchange for a reduction in a prison sentence he was serving for an unrelated crime.

### Other Evidence Introduced at Trial

The autopsy surgeon testified that Arce died as a result of sustaining 12 gunshot wounds. The police found numerous shell casings in the area of the shooting. An expert testified that all of the shell casings appeared to have been fired by the same gun.

A camera at a nearby hotel recorded the attempted robbery and shooting. The images from the camera were shown to the jury. The prosecutor described the images as showing that two men approached the victim in a pincer action, with a third man in the middle of the street. The prosecutor acknowledged that the images were blurry.

Frederick Stewart testified on behalf of the defense at trial. Stewart claimed to know of Lacy in San Francisco and heard people say that Lacy was a jacker, signifying that he robbed people. In January 2007, roughly four years after the shooting death of Arce, Lacy and Stewart happened to be inmates at the same prison. Lacy told Stewart that Lacy's girlfriend had visited him in prison and had told him that detectives wanted to talk to Lacy about a homicide. According to Stewart, Lacy disclosed to him that he had shot a Mexican pimp in an attempted robbery in San Francisco in 2003. Lacy and Stewart discussed the shooting incident on more than one occasion. Stewart testified that he did not believe Lacy at first but eventually found the story credible. Stewart contacted police and told them he had information about a homicide because he hoped to get time taken off his sentence.

### DISCUSSION

### I. INSTRUCTION ON AIDING AND ABETTING THEORY OF LIABILITY

The court instructed the jury on felony murder as the only theory of liability supporting a murder conviction. The court also instructed the jury with CALCRIM Nos.

4

400 and 401 concerning aiding and abetting liability. On appeal, defendant contends the instruction on aiding and abetting liability was improper because there was no factual support for the theory that he aided and abetted the attempted robbery of Arce. He asserts that, if he was guilty at all, he was guilty as a perpetrator and not as an aider and abettor. He further claims that he was prejudiced by the giving of the instruction because the jury was deadlocked on whether he was the shooter. According to defendant, the jury's inability to agree on the firearm use enhancement demonstrates that at least some jurors relied on an aiding and abetting theory that was purportedly factually unsupported. Defendant's claim of error is meritless.

As an initial matter, he waived his claim by failing to object at trial. Although he requested a modification to the aiding and abetting instruction that the court denied, he did not object to the instruction on the ground that there was no evidentiary support for it. A claim of instructional error is generally not cognizable on appeal if the defendant fails to object to the instruction at trial or request a clarification. (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1097, fn. 29.) Further, his failure to object on this basis constitutes an implicit acknowledgment by counsel that there was sufficient evidence to support the instruction. (Cf. *People v. Bolin* (1998) 18 Cal.4th 297, 326; see also *People v. Farnam* (2002) 28 Cal.4th 107, 165.) Indeed, at trial defense counsel urged that, even if the court refused his requested modification—which would have added a sentence requiring the jury to find beyond a reasonable doubt that he was an aider and abettor—it was still appropriate to proceed to aiding and abetting liability if the jury rejected the theory that he was the perpetrator. Under the circumstances, defendant has forfeited his claim of error. Even if the issue were preserved for appeal, we would still reject the claim because the instruction was properly given, as we explain.

To be guilty on a theory of aiding and abetting, a defendant must have (1) known the unlawful purpose of the perpetrator, (2) acted with the intent or purpose of committing, encouraging, or facilitating the commission of the offense, and (3) by act or advice, aided, promoted, encouraged, or instigated the commission of the crime. (*People v. Beeman* (1984) 35 Cal.3d 547, 561.) "[A]n aider or abettor 'is guilty not only of the

5

offense he intended to facilitate or encourage, but also of any reasonably foreseeable offense committed by the person he aids and abets.' " (*People v. Hayes* (1999) 21 Cal.4th 1211, 1271, fn. 20.)

"Under the felony-murder rule, an accomplice is liable for killings occurring while the killer was acting in furtherance of a criminal purpose common to himself and the accomplice, or while the killer and the accomplice were jointly engaged in the felonious enterprise." (*People v. Thompson* (2010) 49 Cal.4th 79, 117.) A sharp line does not always exist between the direct perpetrator and an aider and abettor. (*Ibid.*) "It is often an oversimplification to describe one person as the actual perpetrator and the other as the aider and abettor. When two or more persons commit a crime together, both may act in part as the actual perpetrator *and* in part as the aider and abettor of the other, who also acts in part as an actual perpetrator. . . . The aider and abettor doctrine merely makes aiders and abettors liable for their accomplices' action as well as their own. It obviates the necessity to decide who was the aider and abettor and who the direct perpetrator or to what extent each played which role." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1120.)

In this case, the prosecution presented substantial evidence that defendant aided and abetted other participants in the attempted robbery, even if the evidence also showed that defendant was a direct perpetrator. The prosecution's evidence established that defendant left the car at the same time and for the same purpose as Mitchell and Davis, both of whom also approached the victim and participated in the robbery attempt. A juror could reasonably infer that defendant intended to aid the others, even if in so doing he was also acting as a direct perpetrator in the crime. Consequently, aiding and abetting was a factually supported theory of liability.

The fact that the jury deadlocked on the firearm use enhancement is irrelevant to whether defendant was liable on a felony-murder theory premised on his participation in an attempted robbery. The most reasonable explanation for the jury's verdict is that they concluded that defendant was one of a group of men who attempted to rob Arce, who died during the course of the attempted robbery. Although there may have been disagreement about whether defendant actually fired the shots that killed Arce, the

6

verdict reflects that the jury believed that defendant was guilty on a felony-murder theory either as a direct perpetrator *or* as an aider and abettor. It is well settled that a "jury need not decide unanimously whether a defendant was a direct perpetrator or an aider or abettor, so long as it is unanimous that he was one or the other." (*People v. Wilson* (2008) 44 Cal.4th 758, 801.)

Although the prosecutor urged that defendant was the shooter, the evidence allowed an inference that one of the other participants in the attempted robbery actually fired the fatal shots. In closing argument, the prosecutor acknowledged that Lacy testified that Mitchell had a gun on the night of the murder. Defense counsel likewise emphasized testimony demonstrating that Mitchell was armed, but took the position that Lacy was the actual shooter in light of his purported confession to a fellow prison inmate. Defense counsel also argued there was no evidence that defendant was the shooter other than the testimony of Mitchell and Lacy, whom counsel characterized as liars. In light of the evidence and the arguments of counsel, some jurors may have concluded there was sufficient evidence to support a conclusion that defendant was involved in the attempted robbery even though they could not conclude beyond a reasonable doubt that he fired the shots that killed Arce.

Defendant's reliance on *People v. Singleton* (1987) 196 Cal.App.3d 488 is misplaced. There, the defendant was a passenger in a car that was stopped by the police. An officer found 42 bindles of cocaine in the defendant's boot. (*Id.* at pp. 490–491.) In arguing that the defendant was guilty of possession for sale of cocaine, the prosecution took the position that the defendant may have intended to aid and abet an unidentified seller of cocaine, identified as "Mr. X." (*Id.* at p. 492.) The prosecution clarified that the instructions were not intended to suggest that the driver of the vehicle was the seller that the defendant was aiding and abetting. (*Ibid.*) The Court of Appeal concluded there was no evidentiary support for an aiding and abetting instruction. (*Id.* at p. 493.) The court reasoned that in cases upholding accomplice liability in narcotics cases, "there has always been evidence of a principal whom the defendant in some way knowingly assisted in the accomplishment of a criminal objective." (*Ibid.*) The court found no case "where guilt

7

of aiding and abetting has been upheld despite the total absence of any proof of a perpetrator." (*Ibid.*)

Here, there was ample evidence of perpetrators other than defendant. Mitchell and Davis participated in the attempted robbery along with defendant. The testimony of two percipient witnesses established defendant's participation in the attempted robbery and the stills from the video of the offense established the sequence of events, even if they did not clearly establish who played which role in the crime. This is not a case in which the prosecutor asked the jury to premise aiding and abetting liability on the speculative possibility that an anonymous, unidentified perpetrator committed the attempted robbery or the shooting. Consequently, it was not error to give an aiding and abetting instruction.

## II. LACY'S ACCOMPLICE STATUS AS AN ISSUE OF FACT FOR THE JURY

There were two witnesses at trial who implicated defendant in the attempted robbery—Mitchell and Lacy. The court instructed the jury that, if it found a murder had been committed, then Mitchell was an accomplice as a matter of law but the jury was to determine as a factual matter whether Lacy was an accomplice. The court further instructed the jury that a conviction requires corroboration of accomplice testimony, and that the testimony of one accomplice is not adequate corroboration of the testimony of another accomplice.

Defendant contends the trial court erred by failing to instruct the jury that Lacy was an accomplice as a matter of law. We disagree.

California law prohibits a conviction based on the uncorroborated testimony of an accomplice. (§ 1111.) An accomplice is one "who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." (*Ibid.*)

"Whether a person is an accomplice within the meaning of section 1111 is a factual question for the jury to determine in all cases unless ' "there is no dispute as to either the facts or the inferences to be drawn therefrom." ' " (*People v. Avila* (2006) 38 Cal.4th 491, 565.) A trial court should instruct the jury that a witness is an accomplice as a matter of law only when the facts establishing that witness's status are clear and

8

undisputed.  (*Ibid.*; see also *People v. Demera* (1923) 64 Cal.App. 121, 123 [even if conflict is so slight as to be neglible, issue of accomplice status must be left to jury].)  It is the defendant's burden to prove that a witness is an accomplice for purposes of the corroboration requirement.  (*People v. Fauber* (1992) 2 Cal.4th 792, 834.)

Lacy testified in substance that he told the others not to commit a robbery and that, although he was present when the attempted robbery occurred, he did not participate in it and did not move more than a foot away from the car.  If the jury credited Lacy's testimony, it would have concluded that he was merely present at the scene and did not share the intent to rob Arce.  Mere presence at the scene of the crime and failure to take steps to prevent the crime do not establish aiding and abetting liability.  (*People v. Verlinde* (2002) 100 Cal.App.4th 1146, 1161.)

Defendant does not dispute the substance of Lacy's testimony but instead argues that Lacy failed to avail himself of two opportunities to leave a group that he knew intended to commit robberies.  He further contends that Mitchell's testimony implicated Lacy in the robbery.  This evidence does not clearly establish that Lacy was an accomplice but simply gives rise to conflicting inferences about whether he played a role in the crime.  Lacy may have been reluctant to leave the others for any number of reasons.  His decision to remain with the group—either before or after the shooting— does not necessarily support an inference that he intended to aid in the commission of the attempted robbery.  The matter was properly left to the jury to assess whether Lacy was an accomplice.

## III.    PROSECUTORIAL MISCONDUCT

Finally, defendant contends the prosecutor committed misconduct by improperly vouching for its two "star" witnesses during closing arguments.  According to defendant, the prosecution implicitly argued that Mitchell and Lacy had been found credible before trial by other jurors, judges, veteran police detectives, and prosecutors in both Oakland and San Francisco.  Defendant acknowledges that counsel did not object to the purported misconduct.  For reasons we shall explain, there was neither prejudicial misconduct nor prejudicial ineffective assistance of counsel as a result of the failure to object.

During closing argument, defense counsel claimed that Lacy and Mitchell were "two rotten planks" in the foundation of the prosecution's case. Counsel asked the jury whether it would trust them with an important decision or loan them money. Counsel also urged that they had a clear motive to lie and had lied in the past to the police and under oath. Defense counsel referred to Lacy's testimony at another trial and at the preliminary hearing in the Davis case. Likewise, defense counsel referred to testimony Mitchell had given previously, including at a preliminary hearing. In conclusion, defense counsel referred to a statement attributed to Franklin Delano Roosevelt: "Repetition does not make a lie the truth."

In rebuttal, the prosecutor argued as follows:

"You know who is the only innocent person in all this, Armando Arce. He didn't ask for any of this to happen to him. He is the only one innocent here. [¶] As for this being some grand conspiracy that every witness before you testilied [sic], testilied [sic] in Oakland, testilied [sic] at the preliminary hearing. [¶] What is a preliminary hearing? You haven't been explained that yet. It is basically a legal hearing that is held in front of a judge. You heard some prior testimony from a preliminary hearing where a witness is sworn and has to testify before a judge to show that there is sufficient evidence to charge somebody. [¶] So everybody who testified here testilied [sic] before, and they are lying again, and this is just some great big conspiracy that, you know, experience[d] detectives in the Oakland Police Department were duped, 20-plus-year veterans from San Francisco Police Department duped, Oakland jury duped, Oakland judges duped, San Francisco judges duped, Alameda County district attorney's office, you know, defrauded. San Francisco district attorney's office just fell right into the whole big lie, and Joevan Bowen is just some poor little innocent guy. [¶] Do you really believe that? Do you really think he is? Do you really think that's what the evidence showed here?"

The prosecutor acknowledged that Lacy and Mitchell were not "good guys" and clarified that she would not expect jurors to feel comfortable lending them money. But the prosecutor went on to explain why their testimony was credible, despite some

10

inconsistencies in their statements and the obvious motive to foist responsibility for a murder onto someone else.

"A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." (*People v. Morales* (2001) 25 Cal.4th 34, 44.) " 'A prosecutor is prohibited from vouching for the credibility of witnesses or otherwise bolstering the veracity of their testimony by referring to evidence outside the record. . . . However, so long as a prosecutor's assurances regarding the apparent honesty or reliability of prosecution witnesses are based on the "facts of [the] record and the inferences reasonably drawn therefrom, rather than any purported personal knowledge or belief," her comments cannot be characterized as improper vouching.' " (*People v. Dickey* (2005) 35 Cal.4th 884, 913–914.) A defendant asserting prosecutorial misconduct must establish a reasonable likelihood that the jury construed the remarks in an objectionable fashion. (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 305.)

As noted above, defense counsel did not object during the prosecutor's rebuttal. As a consequence, any claim of prosecutorial misconduct has been forfeited. (*People v. Stewart* (2004) 33 Cal.4th 425, 498.) We disagree with defendant's assertion that the claim is preserved for appeal because an objection would have been futile. (See *People v. Gamache* (2010) 48 Cal.4th 347, 388 [despite " 'ritual incantation' " that admonition would have made no difference, defendant identified nothing to support this claim].) In *Stewart,* the defendant failed to object to the prosecutor's statement that " 'the only reason we brought [these charges], is because they're true.' " (*People v. Stewart, supra,* at p. 498.) The Supreme Court agreed with the People that a timely admonition would have cured any harm. (*Ibid.*) Likewise, in this case an objection, if appropriate, would not only have cut off the prosecutor's argument but would have also allowed the court to instruct the jury to disregard any improper argument.

Defendant argues that if the issue was forfeited then this court should consider whether the failure to object constitutes ineffective assistance of counsel. In order to establish a claim of ineffective assistance of counsel, a defendant bears the burden of demonstrating both that counsel's performance fell below an objective standard of reasonableness (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688) and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Id.* at p. 694; *People v. Ledesma* (2006) 39 Cal.4th 641, 746.) If the record does not show the basis for counsel's allegedly deficient act or omission, the defendant's remedy is through a petition for habeas corpus unless there is no conceivable tactical reason for the act or omission. (*People v. Salcido* (2008) 44 Cal.4th 93, 172.) The rule is particularly apt in situations where the claimed inadequacy results from counsel's failure to object. " '[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance.' " (*Ibid.*)

Here, the record does not disclose the reason for counsel's failure to object. Among other reasons for choosing not to object, counsel might have concluded that an objection would simply call attention to the many other occasions on which Lacy and Mitchell had offered statements or testimony that was largely consistent with their trial testimony. (See, e.g., *People v. Collins* (2010) 49 Cal.4th 175, 233 [counsel could have reasonably concluded that objecting would focus jury's attention on the subject of the objection].) As support for his claim that there was no tactical reason for counsel's failure to object, defendant cites the fact that defense counsel filed a new trial motion premised in part on the claim that the prosecutor improperly vouched for witnesses. However, the new trial motion does not establish that defense counsel had no tactical reason for remaining silent during the prosecutor's rebuttal. Among other things, the new trial motion did not suggest counsel's performance had been deficient or include a declaration from counsel stating that there was no tactical reason for declining to object. The filing of a new trial motion could just as easily support an inference that defense counsel decided to pursue the issue in a new trial motion after making a tactical decision

12

at trial that proved unsuccessful. (See *People v. Dickey*, *supra*, 35 Cal.4th 884, 926–927 [even though substitute counsel filed new trial motion on ground that defense counsel was ineffective for failing to call a witness, that was clearly a tactical decision].) In short, defendant has failed to establish on direct appeal that his counsel's performance was deficient.

Further, even if counsel were ineffective for failing to object, there is no reasonable probability that the outcome would have been more favorable to defendant if an objection had been made. According to defendant, the prosecutor's rebuttal argument was prejudicial because it could have misled the jurors into believing that jurors, judges, detectives, and prosecutors had found Mitchell and Lacy credible. In fact, when the argument is considered in context, it was clearly a response to defense counsel's contention that Mitchell and Lacy were liars whose statements did not gain any more credibility just because they were repeated over the years to various detectives, prosecutors, and judges. The prosecutor responded, in effect, that defense counsel's theory was improbable because it rested on the notion that there was a vast conspiracy to frame defendant that had managed to deceive everyone involved, including experienced detectives and prosecutors. The statements were a fair response to defense counsel's argument.

Moreover, the statements did not imply that the prosecutor had some special knowledge not disclosed to the jury that tended to show Mitchell and Lacy were credible. (See *People v. Fernandez* (2013) 216 Cal.App.4th 540, 561 [misconduct occurs when prosecutor implies there is evidence outside record that shows witness is credible].) The jury was well aware of the fact that Mitchell and Lacy had testified in earlier trials and other judicial proceedings, including preliminary hearings. The jury was also aware that they had made statements to experienced police officers, who had obviously found their story sufficiently credible to pursue charges against defendant. The claimed "vouching" was based on reasonable inferences drawn from a record that showed experienced detectives and prosecutors were inclined to pursue charges against Bowen on the basis of statements given by Mitchell and Lacy. (See *People v. Anderson* (1990) 52 Cal.3d

13

453, 478–479 [it was not error to suggest that experienced officers would not lie and risk reputations just to convict one defendant]; see also *People v. Johnson* (1950) 99 Cal.App.2d 717, 728–730 [not error for prosecutor to express opinion that sheriff and district attorney seemed to think defendant was guilty].)

Defendant also claims it was improper for the prosecutor to refer to the preliminary hearing, arguing that it is misconduct to urge a jury to convict simply because a judge found probable cause to hold a defendant to answer on the charged offenses. (See *People v. Whitehead* (1957) 148 Cal.App.2d 701, 706.) Viewed in context, the prosecutor's statement did not constitute misconduct. The prosecutor simply noted that it was defense counsel's claim that Mitchell and Lacy had lied repeatedly, including at preliminary hearings. The prosecutor then explained that a preliminary hearing is "where a witness is sworn and has to testify before a judge to show that there is sufficient evidence to charge somebody." The prosecutor did not suggest that the jury should consider Lacy or Mitchell credible simply because defendant had been held to answer at a preliminary hearing.

In her closing argument, the prosecutor discussed at length why the jury should find Mitchell and Lacy to be credible. Insofar as a portion of the prosecutor's rebuttal argument could be characterized as implying that other judges and juries had found Mitchell and Lacy to be credible, any such implication was fleeting and indirect. Taken in context, there is no reasonable likelihood that the jury construed the remarks to suggest that it could rely on credibility determinations made by other persons. Indeed, after pointing out that it was improbable that Lacy and Mitchell had managed to deceive everyone in the criminal justice system, the prosecutor clarified that it was ultimately for the jury to decide what the evidence showed. Thus, the prosecutor properly left it for the jury to assess the witnesses' credibility. Under these circumstances, we conclude there is no reasonable probability that the jury would have reached a different outcome if defense counsel had interposed an objection to the prosecution's rebuttal argument.

14

## DISPOSITION

The judgment is affirmed.

_____
McGuiness, P.J.

We concur:

_____
Pollak, J.

_____
Siggins, J.